# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

## CIVIL ACTION NO. 1:20-CV-288-SEB-MJD

---

## COURTNEAY A. DELLAVALLE-JONES
## VERSUS
## XEROX CORPORATION AND LYNNE MALONE, Individually and in her Official Capacity

---

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
## BY DEFENDANTS,
## XEROX CORPORATION AND LYNNE MALONE

---

Respectfully submitted by:

*/s/Nicole S. Adler*
**NICOLE S. ADLER, LA. BAR No. 08612**
**JESSICA M. THOMAS, LA. BAR. No. 38424**
**The Kullman Firm**
**1100 Poydras Street, Suite 1600**
**New Orleans, LA 70163-1600**
**Telephone:  (504) 524-4162**
**Facsimile:  (504) 596-4114**
**Email: NSA@kullmanlaw.com**
          **JMT@kullmanlaw.com**

**COUNSEL FOR DEFENDANTS**
**XEROX CORPORATION AND**
**LYNNE MALONE**

# TABLE OF CONTENTS

**FACTUAL BACKGROUND** ............................................................................................... 1

   A.   Plaintiff's Employment. ......................................................................... 1

   B.   The Company-Wide Reduction-in-Force. ............................................. 2

   C.   Plaintiff's Pregnancy and Request for Short-Term Disability Leave. ............................. 6

   D.   The Instant Lawsuit. .............................................................................. 7

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE** ................................................... 8

**LAW AND ARGUMENT** ................................................................................................ 15

   A.   Summary Judgment Standard. ............................................................. 15

   B.   As a Matter of Law, Plaintiff Cannot Establish a *Prima Facie* Case of Disability or

Pregnancy Discrimination in Her Discharge. ........................................... 16

      1.   The Undisputed Facts Establish that Plaintiff was Not Disabled. ................................. 17

      2.   Plaintiff Was Not Treated Less Favorably Than Similarly Situated Non-Pregnant, Non-

Disabled Co-Workers. ........................................................................ 19

   C.   As a Matter of Law, Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation...... 21

      1.   Plaintiff Did Not Engage in Protected Activity Under the ADA or Title VII. .............. 22

      3.   Plaintiff Has Not Proven Causation. ................................................... 24

      4.   Plaintiff Was Not Treated Less Favorably Than Similarly Situated Co-Workers. ........ 25

   D.   Plaintiff was Terminated Pursuant to a Legitimate, Non-Discriminatory, Non-

Retaliatory Reason and Cannot Establish Pretext. ................................... 25

ii

1.   Timing Negates any Inference of Pretext..........................................................26

2.   There Is No Evidence of Discriminatory Animus..........................................27

E.   Plaintiff's FMLA Claims Fail as a Matter of Law..........................................27

1.   As a Matter of Law, Plaintiff Cannot Establish Interference.......................28

a.   Plaintiff was Not Denied any Benefits Under the FMLA. ........................28

b.   Plaintiff was Not Entitled to Job Restoration. ..........................................29

2.   As a Matter of Law, No FMLA Retaliation Occurred.  ...............................31

a.   Plaintiff Did Not Engage in Protected Activity. ......................................31

b.   Plaintiff Requested Leave After she was Selected for Layoff. .................32

c.   Defendants Had a Legitimate Reason for Their Actions...........................33

F.   Plaintiff is Not Entitled to Punitive or Emotional Distress Damages under the FMLA....34

**CONCLUSION** ...............................................................................................**34**

## **TABLE OF AUTHORITIES**

### **Cases**

Adirieje v. ResCare, Inc., No. 118CV01429TWPDLP (S.D. Ind. Sept. 30, 2019) ..................... 18

Aubuchon v. Knauf Fiberglass, 359 F.3d 950 (7th Cir. 2004) ..................................... 31

Avina v. H.T. Hackney Co., No. 1:04-CV-1590-RLY-TAB (S.D. Ind. Jan. 25, 2006) .............. 23

Brown v. Sara Lee Corp., No. 107CV1118DFHDML (S.D. Ind. Apr. 14, 2009) ....................... 26

Burnett v. LFW Inc., 472 F.3d 471 (7th Cir. 2006) ................................................. 28

Caskey v. Colgate-Palmolive Co., 535 F.3d 585 (7th Cir. 2008) ................................... 31

Castaneda v. Bd. of Educ. of City of Chicago, No. 16 C 10167, 2019 (N.D. Ill. Mar. 25, 2019) 28

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ..................................................... 15

Clay v. Holy Cross Hosp., 253 F.3d 1000 (7th Cir. 2001) .......................................... 26

Cox v. Coca-Cola, 191 F. Supp. 3d 909 (S.D. Ind. 2016) ........................................... 16

Curtis v. Costco Wholesale Corp., 807 F.3d 215 (7th Cir. 2015) .......................... 31, 32

Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522 F. 3d 595 (7th Cir. 2011) ................ 22

Foos v. Taghleef Indus., Inc., 132 F. Supp. 3d 1034 (S.D. Ind. 2015) ......................... 23

Franzen v. Ellis Corp., 543 F.3d 420 (7th Cir. 2008) .................................... 30

Geier v. Medtronic, Inc. 99 F.3d 238 (7th Cir. 1996) ............................................ 21

Goelzer v. Sheboygan Cty., Wis., 604 F.3d 987 (7th Cir. 2010) ................................... 31

Gorski v. Med. Protective Co., No. 1:09-CV-350 (N.D. Ind. Nov. 10, 2010) ........................... 33

Hardwick v. John and Mary E. Kirby Hosp., 860 F. Supp. 2d 641 (C.D. Ill. 2012) ................... 22

James v. Hyatt Regency Chicago, 707 F.3d 775 (7th Cir. 2013) ................................... 31

JPM Inc. v. John Deere Indus. Equip. Co., 94 F.3d 270 (7th Cir. 1996) ....................... 15

JPM Inc. v. John Deere Indus. Equip. Co., 94 F.3d 270 (7th Cir. 1996) ....................... 15

Kodl v. Board of Educ. Sch. Dist. 45, Villa Park, 490 F.3d 558 (7th Cir. 2007) ........................ 26

Kotaska v. Fed. Express Corp., 966 F.3d 624 (7th Cir. 2020).................................................... 24

LaFary v. Rogers Grp., Inc., 591 F. 3d 903 (7th Cir. 2010) ...................................................... 17

Martinez v. UHS of Delaware, Inc., 62 F. Supp. 3d 796 (C.D. Ill. 2016) ................................. 17

Murray v. AT&T Mobility LLC, 374 F. App'x 667 (7th Cir. 2010)............................................ 31

Northington v. H & M Intern., 712 F. 3d 1062, 1065 (7th Cir. 2013).......................................... 23

Ortiz v. John O. Butler Co., 94 F.3d 1121 (7th Cir. 1996) ........................................................ 16

Pagel v. TIN Inc., 695 F. 3d 622 (7th Cir. 2012).......................................................................... 31

Panizzi v. City of Chicago Bd. of Educ., No. 07 C 846, 2007 (N.D. Ill. Nov. 19, 2007)............. 26

Patterson v. Avery Dennison Corp., 281 F.3d 676 (7th Cir 2002) ............................................. 21

Ptasznik v. St. Joseph Hosp., 464 F.3d 691 (7th Cir. 2006) ...................................................... 26

Ridings v. Riverside Med. Ctr., 537 F.3d 755 (7th Cir. 2008) ................................................... 32

Scheidt v. Floor Covering Assocs., Inc., No. 16-CV-5999 (N.D. Ill. Sept. 28, 2018) ................ 19

Schuster v. Lucent Tech., Inc. 327 F. 3d 569 (7th Cir. 2003) ..................................................... 25

Simpson v. Office of Chief Judge of Circuit Court of Will Cty., 559 F.3d 704 (7th Cir. 2009).. 30

Somerville v. City of Chicago, 291 F. Supp. 2d 737 (N.D. Ill. 2003) ......................................... 21

Sons v. Henry Cty., No. 105CV00516DFHTAB (S.D. Ind. Mar. 13, 2007)............................... 34

Soodman v. Wildman, Harrold, Allen & Dixon, No. 95 C 3834  (N.D. Ill. Feb. 10, 1997)... 23, 30

Troupe v. May Dept. Stores Co., 20 F. 3d 734 (7th Cir. 1994) ................................................... 23

Tucker v. Express Scripts Holding, No. 114CV01698TWPMJD (S.D. Ind. May 10, 2016)....... 25

Watkins v. Henderson, No. IP99-1945-C (S.D. Inc. Mar. 5, 2001)............................................. 33

Wellman v. DuPont Dow Elastomers, L.L.C., 739 F. Supp. 2d 665 (D. Del. 2010).................... 23

Wilson v. Russell-Stanley Corp., 90 F. App'x 958 (7th Cir. 2004)............................................. 27

**Statutes**

29 C.F.R. §1630.2(h) ....................................................................................... 18

29 U.S.C. §2614(a)(3)(B) ................................................................................ 30

42 U.S.C. §12102(1)(A-C).............................................................................. 17

**Rules**

Fed. R. Civ. P. 56............................................................................................ 15

## **TABLE OF EXHIBITS**

| EXHIBIT | | DESCRIPTION |
|---|---|---|
| A | | Excerpts from Deposition of Plaintiff, Courtneay A. Dellavalle-Jones |
| | A-6 | Plaintiff's Offer Letter |
| | A-8 | April 30, 2018 Email from Plaintiff to Sally Muncy |
| | A-9 | Plaintiff's Short-Term Disability Questionnaire |
| | A-11 | May 1, 2018 Email Chain |
| | A-15 | Plaintiff's Revised Short-Term Disability Forms |
| | A-24 | Medical Provider Short-Term Disability Request Form |
| B | | Excerpts from Deposition of Lynne Malone |
| | B-18 | March 26, 2018, Instant Message Chain |
| C | | Excerpts from Deposition of Sally Muncy |
| D | | Declaration of Lynne Malone |
| | D-1 | Confidentiality Agreement, Project Compass |
| | D-2 | September 14, 2017 Email – Action: Due Friday – Compass Task Allocations |
| | D-3 | September 22, 2017 Email – Urgent: Cost Savings Ideas |
| | D-4 | January 10, 2018 Email – Confidential: Compass Assessment Calibration |
| | D-5 | January 23, 2018 Email – VP Assessment |
| | D-6 | January 31, 2018 Email – VRIF Clarification |
| | D-7 | January 22, 2018 Memo Announcing Voluntary Reduction in Force |
| | D-8 | Reassignment Memoranda |
| | D-9 | April 19, 2018 Email – Action Required: Compass Approval |
| | D-10 | October 2017 Organizational Chart for the HiTech Organization |
| | D-11 | Organizational Chart for HiTech Organization after Project Compass |
| | D-12 | Older Workers Benefit Protection Act Notice |

**NOW INTO COURT**, through undersigned counsel, come Defendants, Xerox Corporation ("Xerox") and Lynne Malone ("Ms. Malone") (collectively, "Defendants"), and submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.  As explained fully below, there is no genuine issue of material fact regarding any of Plaintiff's, Courtneay DellaValle-Jones' ("Plaintiff"), claims, and each is subject to summary dismissal, for the following non-exclusive reasons:

1.  Plaintiff was not disabled as defined by the ADAAA;

2.  Plaintiff was selected for layoff before she was pregnant or suffering from pregnancy-related complications;

3.  Plaintiff's termination was the result of a companywide reduction-in-force ("RIF") also impacting non-disabled and non-pregnant workers; and

4.  Plaintiff received all benefits under the FMLA to which she was entitled.

Accordingly, Defendants are entitled to summary judgment as a matter of law on each of Plaintiff's claims.

## FACTUAL BACKGROUND

### A. Plaintiff's Employment.

In June 2014, Plaintiff began her employment with Xerox as an Account Operations Manager ("AOM") in its North America Operations, Service Delivery, HiTech Organization.[1] Plaintiff was assigned to work with a team on the Procter & Gamble ("P&G") account and reported directly to Sally Muncy ("Ms. Muncy"), a Client Operations Director ("COD"), who reported to

---

[1] *See* Excerpts from Plaintiff's Deposition Transcript, attached as Exhibit ("Ex.") A, at 26:7-17; 28:25-29:1.  Plaintiff held this position throughout her employment with Xerox.

1

Lynne Malone, the Vice President of Client Operations for the HiTech Organization.[2]  P&G's headquarter is in Cincinnati, Ohio.[3]  Plaintiff was a virtual employee, working from her home in Indianapolis, Indiana.[4]  In her role, Plaintiff admits that she spent roughly 40-50% of her time completing billing responsibilities, though her managers believe that she spent closer to 90-95% of her time on billing responsibilities.[5]  Specifically, Xerox bills its clients for office and production equipment, as well as for triaging technical issues, delivering office supplies, etc.[6]  Plaintiff's duties included validating devices on client invoices, creating backup reports for invoices, ensuring that said reports accurately reflected the customer's invoice, and processing taxes.[7]  Beginning in late 2017, Plaintiff began supporting billing on the Medtronics account, in addition to the P&G account.[8]

### B.  The Company-Wide Reduction-in-Force.

In August 2017, as part of a series of cost-cutting and restructuring efforts, Xerox notified Ms. Malone that it was implementing a global restructuring action referred to as Project Compass.[9]  Specifically, several roles within Xerox's Service Delivery group – including the AOM role – were being repurposed and realigned into a newly configured version of the Service Delivery Manager ("SDM") position.[10]  The repurposed SDM role did not involve any billing duties.[11]  Rather, all billing responsibilities were reassigned to a shared services organization, United States Customer

---

[2] *Id.* at 26:18-20.  *See also* Plaintiff's Offer Letter, attached as Ex. A-6; Declaration of Lynne Malone, attached as Ex. D.

[3] *See* Ex. A at 67:21-68:1.

[4] *See* Ex. A at 33:9-18; 15:3-14.

[5] *See* Excerpts from Lynne Malone's Deposition Transcript, attached as Ex. B, at 62:24-63:9.  *See also* Excerpts from Sally Muncy's Deposition Transcript, attached as Ex. C, at 55:9-13; Ex. A at 47:2-25; Ex. D.

[6] *See* Ex. B at 38:15-39:1; Ex. D.

[7] *See* Ex. A at 47:5-12; Ex. B at 36:23-37:19; and Ex. D.

[8] *See* Ex. A at 46:23-47:1.

[9] *See* Ex. B at 28:22-30:14; Ex. D; Confidentiality Agreement, attached as Ex. D-1.

[10] Xerox repurposed the SDM title; however, the SDM position under Project Compass entailed different duties from the prior SDM role.  *See id; see also*, 1/10/18 Email and Attachment, attached as Ex. D-4.

[11] *See* Ex. B at 36:7-12; Ex. D; and D-4.

2

Business Operations ("USCBO"), in Guatemala.[12]  Additionally, as part of the Project Compass restructuring, Xerox was reducing the number of employees who would remain employed in the reconfigured SDM position by implementing a cost-cutting RIF impacting employees in the COD, AOM, and SDM positions.[13]

Xerox tasked Ms. Malone with selecting for elimination five resources in the COD, AOM, and/or SDM positions reporting to her by assessing their skills and abilities as compared to the job duties in the newly reconfigured SDM position.[14] Ms. Malone was specifically prohibited from discussing Project Compass with anyone else in her organization or asking any of her subordinates to assist with the assessment, as everyone in her organization was eligible for termination.[15] The Project Compass assessment included several categories, including general business knowledge and problem solving.[16]  Each employee was assessed pursuant to a numerical score given in each category, resulting in an overall score for each employee.[17]  Additionally, all AOMs, CODs, and SDMs in the HiTech organization were assessed against one another.[18]

Ms. Malone submitted her assessment of the employees within her organization on September 14, 2017.[19] In that assessment, Plaintiff received the second-lowest score and was selected for layoff.[20] Ms. Malone identified Plaintiff for layoff, in great part, because billing duties were not part of the reconfigured SDM role.[21]  In addition to Plaintiff, Ms. Malone identified the

---

[12] *Id.*
[13] *See* Ex. B at 40:13-42:1; Ex. D.
[14] *See* Ex. B at 32:6-14, 40:13-42:1; Ex. D.  The remaining employees were to be placed in the reconfigured SDM role.  Due to the elimination of the six COD positions reporting to Ms. Malone, Project Compass also involved the creation of a single Service Operations Manager ("SOM") position.  Ms. Malone was allowed to place a COD into the SOM position and count that transfer as one elimination.  *See* Ex. D.
[15] *See* Ex. B at 32:6-14, 35:18-23; Ex. D, and Ex. D-1.
[16] *See* Ex. B at 35:5-14.
[17] *See* Ex. B at 35:15-17.
[18] *See* Ex. B at 121:6-12; Ex. D.
[19] *See* Ex. B at 40:4-5, 118:15-119:12.  *See also* Ex. D; 9/14/17 Email and Assessment, attached as Ex. D-2.
[20] *See* Ex. D and Ex. D-2.
[21] *See* Ex. B at 36:1-20; Ex. D; *see also* 9/22/17 Email "Urgent Cost Savings Ideas," attached as Ex. D-3.

following employees for layoff: Brendan Lenehan ("Mr. Lenehan") (an AOM on the AT&T account), Beth Palmer ("Ms. Palmer") (an AOM on the Microsoft account), Kimberly Hughes ("Ms. Hughes") (an AOM on the Northrop Grumman account), and Leslee Thompson ("Ms. Thompson") (an AOM on the Medtronics account).[22]

Xerox ultimately delayed implementation of Project Compass and the related RIF.[23] As such, Ms. Malone updated her assessments in January 2018.[24] Ms. Malone submitted her revised assessment on January 23, 2018.[25] There was no change in her assessment of Plaintiff, who was again selected for layoff.[26] However, the RIF was delayed until May 2018.[27]

Between Ms. Malone's September 2017 and January 2018 assessments and the implementation of Project Compass, several factors occurred that impacted Ms. Malone's initial selections.[28] Ms. Palmer resigned in December 2017, but Xerox determined that she could not be counted toward the Project Compass reductions, as her resignation and the elimination of her position both occurred in 2017.[29] Similarly, Ms. Thompson retired as part of a voluntary RIF, and also could not count toward the Project Compass reductions as her position, working onsite with a client in Minneapolis, had to be backfilled to meet contractual delivery requirements.[30] Additionally, although Ms. Hughes was initially selected for layoff, she was moved into a new role that did not involve people management and that reported directly into the newly configured

---

[22] See Ex. B at 130:1-5; Ex. D; Ex. D-2; and October 2017 Organizational Chart, attached as Ex. D-10.
[23] *See* Ex. B at 44:1-7; Ex. D.
[24] *See* Ex. B at 44:24-45:4; Ex. D; and 1/23/18 Email and Assessment, attached as Ex. D-5.
[25] *Id.*
[26] *Compare* Ex. D-2 with Ex. D-5. *See also* Ex. D and Ex. B at 46:25-46:3.
[27] *See* Ex. B at 44:1-7; Ex. D.
[28] *See* Ex. B at 46:2-6; Ex. D.
[29] *See* Ex. B at 48:12-16, 54:2-5; 127: 22-25; Ex. D.
[30] *See* Ex. B at 67:16-19, 86:22-23; Ex. D. Ms. Thompson was one of three individuals in Ms. Malone's organization who took part in a voluntary RIF that Xerox implemented in March 2018 as part of its cost cutting efforts. Following Ms. Thompson's retirement and the elimination of all AOM positions, her job duties were subsumed by a newly-hired SDM in Minneapolis, Brittany Klutz. The individual hired for this position had to be able to be physically present at Xerox's client's site in Minneapolis at least four days a week. *See* Ex. B at 86:22-23; 125:20-126:1; Ex. D.

SDM position.[31]  Similarly, Mr. Lenehan was reclassified as a site lead for a client print center in California, where he was already performing the site lead job functions; the position was necessary to meet contractual service level requirements.[32]  To account for the intervening personnel changes, Ms. Malone selected David Given for termination in Project Compass.[33]

Xerox implemented Project Compass in May 2018.[34]  As part of the accompanying RIF, on May 1, 2018, Ms. Malone notified Plaintiff and Mr. Given that their employment would be terminated effective May 15, 2018.[35]  Ms. Malone satisfied her remaining Project Compass headcount reduction requirement with the retirements of Patti Franklin (effective June 30, 2018) and Glen Robichau (effective May 1, 2018).[36]  To date, the billing work that Xerox transferred to USCBO is still performed offshore.[37]

After the Project Compass RIF, the only individual from Ms. Muncy's former team who remained employed was Diorka Ortega ("Ms. Ortega") – a senior resource with many years of experience across multiple projects and accounts.[38]  Prior to the RIF, Ms. Ortega was an SDM – not an AOM – and she did not perform any billing work.[39]  Instead, she led innovation for the

---

[31] She transferred into the Client Associate Network Services Infrastructure position – a technical role mandated in one of Xerox's client contracts and for which the resource had to be located in the D.C. area and have requisite security clearances.  Art Dyson ("Mr. Dyson"), another AOM on the Northrup Grumman account, similarly transferred into a Client Associate Network Services Infrastructure position, which required that he be located in southern California and have security clearances.  Neither Ms. Hughes nor Mr. Dyson could count toward the Project Compass headcount eliminations, even though their AOM positions were eliminated. *See* Ex. B at 54:22-56:2; Ex. D, and Reassignment Memos, attached as Ex. D-8.

[32] *See* Ex. B at 54:22-56:2; Ex. D.

[33] *See* Ex. B at 54:13-15; Ex. D.

[34] *See* Ex. B at 48:1-3; Ex. D.

[35] *See* Ex. B at 48:4-12*;* Ex. C at 111:20-23; Ex. D.

[36] In addition, and as the required fifth position elimination, Traci Shellman's COD role was eliminated, and she moved into the SOM position. *See* Ex. D.

[37] *See* Ex. B at 95:9-13.

[38] *See* Ex. B at 66:10-16; 85:13-19; Ex. C at 80:17-25; 215:21-25; Ex. D.

[39] *See* Ex. D.

P&G account and the effort around P&G print centers globally.[40]  In comparison, Plaintiff was a relatively new hire with limited experience and responsibilities.[41]

In total, in May 2018, as part of Project Compass, Xerox laid off 19 individuals holding AOM positions in its North America Operations, Service Delivery organization.[42]  None of the 28 individuals holding the original SDM position were selected for elimination.[43]

### C. Plaintiff's Pregnancy and Request for Short-Term Disability Leave.

In mid to late-December 2017, Plaintiff discovered that she was pregnant.[44]  Shortly after learning that she was pregnant, Plaintiff informed her direct manager, Ms. Muncy, of her pregnancy.[45]  At no point did Plaintiff inform Ms. Malone that she was pregnant.[46]   In fact, Ms. Malone did not become aware of Plaintiff's pregnancy until March 26, 2018, when Ms. Muncy informed her that Plaintiff was having pregnancy-related complications:[47]

**From:** Muncy, Sally <sally.muncy@xerox.com>
**Sent:** Monday, March 26, 2018 8:41 PM
**To:** Muncy, Sally <Sally.Muncy@xerox.com>; Malone, Lynne <Lynne.Malone@xerox.com>
**Subject:** Conversation with Muncy, Sally

Muncy Sally 12:59 PM:
  Ty Scott is engaged
did I tell you Courtnay is pregnant?
Malone, Lynne 12:59 PM:
no
Muncy Sally 1:00 PM:
well.....she is
and just found out the baby has issues during her 20 week ultra sound
not sure what it means yet......she's waiting to meet with specialist.
Malone, Lynne 1:00 PM:
gosh, hope nothing serious
Muncy Sally 1:01 PM:
they may need to do surgery on the baby prior to birth
Malone, Lynne 1:01 PM:
2018 is horrible year so far

---

[40]*See* Ex. C at 83:7-84:10.
[41] *See* Ex. C at 215.
[42] *See* Ex. D.  *See also* Older Workers Benefit Protection Act ("OWBPA") Notice, attached as Ex. D-12.
[43] *See* Ex. D.
[44] *See* Ex. A at 84:12-19.
[45] *See* Ex. A at 84:20-22 and Ex. C at 87:19-22.
[46] *See* Ex. A at 88:6-14.
[47] *See* Ex. C at 87:19-88:16, 90:11-20.  *See also* Ex. B at 87:17-88:9; Ex. A at 91:16-18; March 26, 2018, Instant Message chain, attached as Ex. B-18.

Then, in late April 2018, Plaintiff informed Ms. Muncy that she **might** need to take short-term disability leave because of complications related to her pregnancy, though she did not specify when such leave would need to begin.[48]  On April 30, 2018, Plaintiff submitted a request for short-term disability benefits to Sedgwick, Xerox's third-party benefits administrator, which indicated that she expected to begin leave in August 2018.[49]  That same day, via email at 5:15 p.m. ET, Plaintiff informed Ms. Muncy that she had opened a claim due to her pregnancy and "potential early leave prior to delivery."[50]  Plaintiff's April 30, 2018, communications with Xerox in no way indicated that she planned to begin leave immediately.[51]  However, after receiving notification of her termination, Plaintiff changed her request and sought to begin short-term disability leave on May 1, 2018.[52]  Xerox granted her request, and Plaintiff took short-term disability leave from May 1, 2018, through September 30, 2018.[53]  The first twelve weeks of Plaintiff's leave were co-designated as FMLA leave.[54]  At the conclusion of her short-term disability leave, Plaintiff's employment was terminated in conjunction with her selection for layoff in Project Compass.[55]

### D.  The Instant Lawsuit.

In her Second Amended Complaint  for Damages and Demand for Trial by Jury ("SAC"), Plaintiff claims that: Xerox discriminated against her in violation of the Americans With Disabilities Act Amendments Act of 2008 ("ADAAA") (Count I); Xerox retaliated against her in violation of the ADAAA (Count II); Xerox discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act of

---

[48] *See* April 30, 2018, email, attached as Ex. A-8.  *See also* Ex. A at 101:5-104:6; Ex. C at 125:12-18; 180:20-182:13.
[49] *See* Plaintiff's Short-Term Disability Paperwork, attached as Ex. A-9.  *See also* Ex. A at 106:4-19.
[50] *See* Ex. A-8.  *See also* Ex. A at 102:24-103:15.
[51] *See* Ex. A-8.  *See also* Ex. A at 102:24-103:15.
[52] *See* Ex. A at 134:16-138:14. *See also* May 1, 2018, Email Chain, attached as Ex. A-11, and Revised STD Forms, attached as Ex. A-15.
[53] *See* Ex. A at 126:14-15; 133:18-20.
[54] *See* Ex. A at 133:24-134:1 and Co-Designation Letter, attached as Ex. A-17.
[55] *See* Ex. A at 126:6-15.

1978 ("PDA") (Count III); Xerox retaliated against her in violation of Title VII and the PDA (Count IV); Xerox and Ms. Malone interfered with her rights under the Family and Medical Leave Act of 1993 ("FMLA") (Count V); and Xerox and Ms. Malone retaliated against her in violation of the FMLA (Count VI).[56]  Specifically, Plaintiff alleges that her termination was discriminatory and retaliatory because she was notified of her layoff shortly after she alleges she requested short-term disability leave for pregnancy-related complications.[57]  Plaintiff also alleges that Defendants violated the FMLA by failing to restore her to her position or an equivalent position upon expiration of her FMLA leave.[58]  Each of Plaintiff's claims is baseless, and Defendants deny Plaintiff's allegations in their entirety.  As discussed below, Defendants are entitled to summary judgment on each of Plaintiff's claims.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Local Rule 56-1 (a), Defendants submit that the following material facts are not in dispute:

1. In June 2014, Plaintiff began employment with Xerox in its North America Operations, Service Delivery, HiTech Organization, as an AOM supporting the Proctor & Gamble account.[59]

2. For the duration of her employment, Plaintiff worked virtually (from her home) located in Indianapolis, Indiana.[60]

3. Throughout her employment, Plaintiff's direct supervisor was Ms. Muncy, the COD for the account Plaintiff serviced.[61]

---

[56] Dkt. No. 40.
[57] Dkt. No. 40 at ¶¶57-71.
[58] Dkt. No. 40 at ¶72-88.
[59] See Ex. A at 26:7-20, 28:25-29:1, 195:15, and Ex. D.
[60] See Ex. A at 15:3-14, 33:9-18, 47:2-25; Ex. B at 62:24-63:9, Ex. C at 55:9-13, and Ex. D.
[61] Ex. A at 26:18-20, 51:8-12; Ex. A-6; Ex. D; and Ex. D-10.

4. Ms. Muncy's direct supervisor was Ms. Malone, the Vice President of Client Operations for the HiTech Organization.[62]

5. The headquarter for the Procter & Gamble account was in Cincinnati, Ohio.[63]

6. At all times relevant to this lawsuit, Plaintiff supported billing on the Procter & Gamble account.[64]

7. Beginning in late 2017, Plaintiff also began supported billing activities on the Medtronics account.[65]

8. From 2016 through 2018, Plaintiff spent no less than 40-50% of her work time on billing activities.[66]

9. Both Ms. Malone and Ms. Muncy testified that they believed Plaintiff spent 90-95% of her time on billing activities.[67]  Ms. Malone's belief that Plaintiff spent the overwhelming majority of her time on billing activities is memorialized in a September 22, 2017, email outlining cost savings ideas.[68]

10. In August 2017, Ms. Malone was notified that Xerox was implementing a global restructuring project (Project Compass) that included a RIF.[69]

11. Specifically, several roles within Xerox – the AOM, SDM, and COD positions – would be repurposed and realigned into a newly configured version of the SDM position.  This would result in the elimination of a layer of management via the elimination of the COD position,

---

[62] *See* Ex. D-10; Ex D.
[63] *See* Ex. A at 67:21-68:1.
[64] Ex. A at 46:6-19, 47:2-25, Ex. B at 62:24-63:9, Ex. C, at 55:9-1, Ex. D.
[65] Ex. A 46:23-47:1.
[66] Ex. A at 47:2-25, 46:6-47:1, Ex. B at 62:24-63:9.  *See also* Ex. C at 55:9-13.
[67] *See* Ex. A at 47:2-25.  *See also* Ex. B at 36:21-37:1, 62:24-63:9; Ex. C at 55:9-13; Ex. D.
[68] See Ex. D and 9/22/17, Email Urgent Cost Savings Ideas, attached as Ex. D-3.
[69] *See* Ex. B at 28:22-30:14; Ex. D; Ex. D-1.

the complete elimination of the AOM position, and a redefining of the primary responsibilities of the SDM position.[70]

12. The repurposed SDM role did not involve billing activities.[71]

13. Rather, all billing responsibilities were being moved into a shared services organization, USCBO.[72]

14. As part of Project Compass, Ms. Malone was tasked with assessing all AOMs, SDMs, and CODs that reported to her organization and selecting four employees for layoff and one for position elimination and placement into a newly created SOM position.[73]

15. Critically, because all of Ms. Malone's direct reports were potentially subject to termination via the Project Compass RIF, she was specifically instructed not to delegate her assessments to any other employee.[74]  As a result, she did not inform Ms. Muncy of the anticipated layoffs or ask for her input in assessing employees.[75]

16. Ms. Malone was instructed to base her assessment on the employee's current ability to perform the job duties of the repurposed SDM role, and not on the employee's potential for growth and development.[76]

17. Ms. Malone submitted the initial assessment on September 14, 2017.[77]

18. Plaintiff had the second lowest score on the September 2017 assessment and was one of the five employees selected for position elimination and layoff.[78]

---

[70] *See* Ex. B at 28:22-30:14; Ex. D; 1/10/18 Email "Confidential: Compass Assessment Calibration," attached as Ex. D-4.  *Compare* Ex. D with Post Project Compass Organizational Chart, attached as Ex. D-11.
[71] *Id. See also* Ex. B at 36:7-12, Ex. D, and Ex. D-4.
[72] *Id.*
[73] *See* Ex. B at 32:6-14; Ex. D.
[74] *See* Ex. B at 32:6-14; Ex. D-1; and Ex. D.
[75] *See* Ex. C at 93:10-16 and Ex. D.
[76] *See* Ex. B at 35:24-36:6; Ex. D.
[77] *See* Ex. B at 40:4-5; Ex. D; Ex. D-2.
[78] *Id.*

19. In addition to Plaintiff, Ms. Malone identified the following employees for layoff: Mr. Lenehan (an AOM on the AT&T account); Ms. Palmer (an AOM on the Microsoft account); Ms. Hughes (an AOM on the Northrop Grumman account); and Ms. Thompson (an AOM on the Medtronics account).[79]

20. In January 2018, Ms. Malone updated the September 2017 assessments, as Project Compass had not yet been implemented.[80]

21. Plaintiff received the same score in the January 2018 assessment as she had in the September 2017 assessment.[81]

22. Therefore, Ms. Malone did not change her determination to include Plaintiff in the Project Compass layoff.[82]

23. Project Compass was not implemented until May 2018.[83]  As a result, several personnel changes affected Ms. Malone's initial selections for the Project Compass RIF.[84]

24. Specifically, Leslee Thompson retired as part of a voluntary RIF.  However, her retirement could not count toward the Project Compass reductions, because her position – working onsite with a client in Minneapolis – had to be backfilled pursuant to Xerox's contractual obligations.[85]

25. Ms. Thompson was one of three individuals in Ms. Malone's organization who took part in a voluntary RIF that Xerox implemented in March 2018 as part of its cost cutting efforts. Following Ms. Thompson's retirement and the elimination of all AOM positions, her job duties were subsumed by a newly-hired SDM in Minneapolis, Brittany Klutz.  The

---

[79] See Ex. B at 130:1-5.  *See also* Ex. D; Ex. D-2; Ex. D-10.
[80] *See* Ex. B at 44:24-45:4; Ex. D; Ex. D-5.
[81] *Id. Compare* Ex. D-2 to D-5.
[82] *Id.*
[83] *See* Ex. D.
[84] *See* Ex. D.
[85] *See* Ex. B at 67:16-19, 86:22-23; Ex. D.

individual hired for this position had to be able to be physically present at Xerox's client's site in Minneapolis at least four days a week.[86]

26. Similarly, Gab Joubert, an AOM on the P&G account, retired effective May 31, 2018, as part of the voluntary RIF.[87]  Following the RIF, her position was backfilled by Yolanda Smith, a newly-hired resource with extensive people management experience who was able to work onsite in Cincinnati.[88]

27. Patti Franklin, an AOM on the Medtronics account, retired effective June 30, 2018.[89]

28. Art Dyson ("Mr. Dyson"), an AOM on the Northrop Grumman account, and Ms. Hughes moved into new roles as Client Associates, Network Services Infrastructure.[90]

29. The Client Associates role was technical in nature, and did not involve people management. Rather, Mr. Dyson and Ms. Hughes were responsible for visiting the client sites and inspecting Xerox devices at each location.  These on-site positions were mandated by Xerox's contracts with Northrop Grumman.[91]

30. On May 1, 2018, Ms. Malone notified Plaintiff that her position was being eliminated and her employment was terminated effective May 15, 2018.[92]

31. Ms. Malone similarly notified Mr. Given – another AOM in her organization – that his position was being eliminated and his employment terminated effective May 15, 2018.[93]

32. Mr. Given, a male employee, was not pregnant or disabled and did not have a record of taking FMLA leave.[94]

---

[86] *See* Ex. B at 86:22-23; 125:20-126:1; Ex. D.
[87] *See* Ex. B at 67:17-24, 148:9-16.  *See also* Ex. C at 69:23-25; 78:1-7.
[88] *See* Ex. C at 216:7-16.
[89] *See* Ex. D.  *See also* Ex. B at 49:8-12.
[90] *See* Ex. D.
[91] *See* Ex. D.
[92] *See* Ex. A at 109:2-7; 112:3-7.
[93] *See* Ex. B at 48:4-12.  *See also* Ex. C at 111:20-23 and Ex. D.
[94] *See* Ex. D.

33. Ms. Malone reached her remaining Project Compass headcount reduction goal by moving a COD into the newly created SOM position and via the inclusion of Glenn Robichau and Patti Franklin, two AOMs who voluntarily retired on May 1, 2018, and June 30, 2018, respectively.[95]  Their positions were not backfilled.[96]

34. In total, in May 2018, as part of Project Compass, Xerox laid off 19 AOMs in its North America Operations, Service Delivery organization.  None of the 28 individuals holding the original SDM position were eliminated.[97]

35. After the Project Compass RIF, the only domestic AOM or SDM from Ms. Muncy's September 2017 team who remained employed was Ms. Ortega – a senior resource with many years of experience across multiple projects and accounts.[98]

36. Prior to the RIF, Ms. Ortega was an SDM – not an AOM[99] – and she did not perform billing work.[100]

37. Rather, she led innovation for the P&G account, developing and managing various projects globally, and led the global effort around P&G print centers.[101]

38. After her initial selection for termination via the Project Compass RIF, in mid-to-late-December 2017, Plaintiff discovered that she was pregnant.[102]

39. Shortly thereafter, Plaintiff informed Ms. Muncy that she was pregnant.[103]

40. At no point did Plaintiff inform Ms. Malone that she was pregnant.[104]

---

[95] *See* Ex. D.
[96] *See* Ex. D.
[97] *See* Ex. D, Ex. D-12.
[98] *See* Ex. B at 66:10-16; 85:13-19; Ex. C at 80:17-25; 215:21-25; and Ex. D.
[99] *See* Ex. C at 42:11-21.
[100] *See* Ex. A at 51:13-18; Ex. D.
[101] *See* Ex. C at 83:7-84:10; 215:21-25.
[102] *See* Ex. A at 84:12-19.
[103] *See* Ex. A at 84:20-22.  *See also* Ex. C at 87:19-22.
[104] *See* Ex. A at 88:6-14.

41. Ms. Muncy did not immediately inform Ms. Malone of Plaintiff's pregnancy.[105]

42. Ms. Malone did not become aware of Plaintiff's pregnancy until March 26, 2018.[106]

43. In March 2018, Plaintiff discovered that her pregnancy was high risk.[107]

44. On April 30, 2018, Plaintiff submitted a request for short-term disability leave to Sedgwick, Xerox's third-party benefits administrator, which indicated that she expected to begin leave in August 2018.[108]

45. After receiving notification of her termination, Plaintiff changed her request, and sought to begin leave as of May 1, 2018.[109]

46. Plaintiff admits that prior to May 1, 2018, she does not recall telling Ms. Muncy that she planned on beginning her leave of absence immediately. [110]

47. Plaintiff alleges that her high-risk pregnancy constituted the disability that is the basis of this lawsuit.[111]

48. Specifically, she alleges that the stress caused by her high-risk pregnancy constituted a disability.[112]

49. She admits that her pregnancy-related complications did not impact her ability to work, walk, stand, bend, or eat.[113]

50. After Xerox became aware of Plaintiff's modified request (for her leave to begin on May 1, 2018), it delayed implementation of her layoff until after said leave ended.[114]

---

[105] *See* Ex. C at 87:19-88:16.
[106] *See* Ex. C at 90:11-20. *See also* Ex. B at 87:17-88:9 and Ex. B-18.
[107] *See* Ex. A at 91:16-18, 102:3- 104:3, 105:2-5.
[108] *See* Ex. A-8. *See also* Ex. A at 101:5-104:6; Ex. C at 125:12-18; 180:20-182:13.
[109] *See* Ex. A at 134:16-138:14. *See also* Ex. A-11.
[110] *See* Ex. A at 105:2-5. *See also* Ex. A-8.
[111] Dkt. 40 at ¶49.
[112] *See* Ex. A at 94:6-22.
[113] *See* Ex. A at 95:20-96:10.
[114] *See* Ex. A at 126:6-15.

51. Plaintiff's leave of absence was designated as FMLA leave from May 1, 2018, through July 30, 2018, and she received a designation letter to that effect.[115]

52. Plaintiff's short-term disability leave, which ran concurrently with her FMLA leave, was effective May 1, 2018.[116]

53. As a result, Plaintiff continued to receive company-sponsored benefits through September 30, 2018 – the last day of her short-term disability leave.[117]

54. Plaintiff delivered her son on July 6, 2018.[118]

55. Plaintiff was not medically able to return to work until eight to ten weeks following the birth of her child (sometime between September 1-15, 2018).[119]

56. The termination of Plaintiff's employment from Xerox was effective on October 1, 2018, following the conclusion of her short-term disability leave.[120]

## LAW AND ARGUMENT

### A.  Summary Judgment Standard.

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment and that such judgment "shall be rendered forthwith" if the evidence and pleadings "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  Summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The mere existence of a factual dispute is not sufficient to bar summary

---

[115] See Ex. A. at 142:11-143:4.  *See also* Co-Designation Letter, attached as Ex. A-17.
[116] Dkt. 40 at ¶77.
[117] *See* Ex. A at 134:5-13.
[118] *See* Ex. A at 18:24-25.
[119] *See* Ex. A at 144:16-145:2.
[120] Dkt. 40 at ¶41.

judgment; only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *JPM Inc. v. John Deere Indus. Equip. Co*., 94 F.3d 270, 273 (7th Cir. 1996). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

Here, summary judgment in favor of Defendants is warranted because the undisputed facts prevent Plaintiff from establishing the following essential elements of her claims: (1) that she was disabled as defined by the ADAAA; (2) that her pregnancy and/or request for leave had any connection to the decision to terminate her employment; (3) that similarly-situated non-disabled, non-pregnant employees received more favorable treatment; (4) that she was denied any benefit under the FMLA; and (5) that she was entitled to job restoration.

### B.  As a Matter of Law, Plaintiff Cannot Establish a *Prima Facie* Case of Disability or Pregnancy Discrimination in Her Discharge.

Count I of Plaintiff's SAC alleges that Xerox discriminated against her in violation of the ADAAA by terminating her employment as part of the Project Compass RIF.[121]  Specifically, she asserts that her high-risk pregnancy constituted a disability under the ADA and that her selection for layoff must have been because of her high-risk pregnancy.  Similarly, Count III alleges that Xerox discriminated against her in violation of Title VII and the PDA by terminating her employment.[122]  As explained in detail below, Plaintiff cannot establish a *prima facie* case as to either claim for several reasons, most notably because she was selected for layoff before she was pregnant, thereby negating any causal connection.

In order to establish a *prima facie* case of disability or pregnancy discrimination, Plaintiff must establish that: (1) she is a member of a protected class [disabled and/or pregnant]; (2) she

---

[121] Dkt. No. 40, pp. 6-7.
[122] *Id* at pp. 8-9.

was meeting Xerox's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a 'similarly situated' non-protected class member.  *See Cox v. Coca-Cola*, 191 F. Supp. 3d 909, 917 (S.D. Ind. 2016); *LaFary v. Rogers Grp., Inc.*, 591 F. 3d 903, 907 (7th Cir. 2010).[123]  Critically, "[f]or pregnancy discrimination cases, the plaintiff must also establish that [her employer] knew she was pregnant." *Id.*  Plaintiff's disability discrimination claim hinges on proof that Xerox knew she was pregnant and knew that the pregnancy was high risk.  *See generally Martinez v. UHS of Delaware, Inc.*, 62 F. Supp. 3d 796, 806 (C.D. Ill. 2016) (disability discrimination claim failed where employee failed to inform her supervisor that she was disabled).  Here, both *prima facie* cases fail as a matter of law because Plaintiff cannot establish that her pregnancy constituted a disability, or that Xerox was aware of her pregnancy at the time of the termination decision.  These claims also fail because she cannot establish that similarly-situated employees outside her protected class (*i.e.*, non-pregnant and non-disabled) received more favorable treatment.

## 1.    The Undisputed Facts Establish that Plaintiff was Not Disabled.

As a threshold matter, Plaintiff's disability discrimination claim fails because she was not disabled within the meaning of the ADA.  The ADA defines disability as a physical or mental impairment that substantially limits one or more major life activities.  42 U.S.C. §12102(1)(A-C).  "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. §12102(2)(A).  An "impairment" is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense

---

[123] *See also Dickerson v. Bd. of Trustees of Cmty. College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011).

organs, respiratory, cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or . . . any mental or psychological disorder, such as an intellectual disability . . . organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. §1630.2(h).

"The case law and the EEOC's regulations and interpretive guidance are clear that pregnancy is not a disability for purposes of the ADA absent unusual circumstances." *Adirieje v. ResCare, Inc.*, No. 118CV01429TWPDLP, 2019 WL 4750037, at *8 (S.D. Ind. Sept. 30, 2019). "The most persuasive decisions draw a distinction between a normal, uncomplicated pregnancy, and an abnormal one—*i.e.*, one with a complication or condition arising out of, but distinguishable from, the pregnancy." *Id.*[124]   Thus, Plaintiff's pregnancy could not have constituted a disability until it was medically categorized as high risk in March 2018.

Even then, Plaintiff's pregnancy did not constitute a disability.   Her own testimony establishes that the high-risk nature of her pregnancy did not substantially limit any of her major life activities:

> Q: How did the diagnosis of your high-risk pregnancy impact your daily life while you were pregnant?
>
> A: Well, as a first-time mom and going through all this, it affected me – I had a lot of stress, anxiety, and unsureness.  But when I was at work, I mean, work kept me busy . . . So it did not affect me at work, but it affected – at that time it just affected me over high stress and high anxiety, and at work it just kept me busy.
>
> Q: Other than your stress and anxiety, did you have any other physical symptoms associated with your high-risk pregnancy?
>
> A: No, it was just my baby that was with the issues.[125]

---

[124] The EEOC's guidance on pregnancy and related issues provides that "[i]mpairments involving other major bodily functions can also result in pregnancy-related limitations.  Some examples include pregnancy-related anemia . . . pregnancy-related sciatica . . . gestational diabetes . . . nausea that can cause severe dehydration . . . swelling, especially in the legs, due to limited circulation . . . and depression (affecting bran function).  *See* EEOC No. 915-003, Enforcement Guidance: Pregnancy Discrimination and Related Issues, 2015 WL 4162723, at *19 (June 25, 2015).

[125] *See* Ex. A at 94:6-22.

This testimony from Plaintiff establishes that, apart from the stress and anxiety incident to any high-risk pregnancy, she did not experience any physical or mental symptoms associated with her pregnancy.[126]  Moreover, Plaintiff testified that said stress and anxiety did not prevent her from performing her job duties:

> Q: But if I heard you correctly, your high-risk pregnancy did not restrict your ability to perform your job; is that correct?
>
> A: I mean, *I didn't have anything physically wrong with me, but anxiety and stress*, it was a lot with my workload at work, yes.  I mean, but I still strived at work and did everything I could.[127]

Plaintiff's testimony clearly establishes that the stress and anxiety she experienced were *not* distinguishable from her pregnancy and did not impact any major life activities.  Thus, Plaintiff's disability discrimination claim fails based on her inability to point to any evidence establishing that her pregnancy substantially limited any major life activity.  *See Scheidt v. Floor Covering Assocs., Inc.*, No. 16-CV-5999, 2018 WL 4679582, at * (N.D. Ill. Sept. 28, 2018) ("Without deprecating the severity of Plaintiff's symptoms, Plaintiff has not identified any medical evidence (or any other admissible evidence) explaining how these symptoms substantially limited her" major life activities).  Finally, even if Plaintiff could establish that she was disabled when she was *notified* of her layoff, the undisputed fact remains that she was *selected* for layoff several months before she became pregnant.

### 2. Plaintiff Was Not Treated Less Favorably Than Similarly Situated Non-Pregnant, Non-Disabled Co-Workers.

Even if Plaintiff could establish that she was disabled, she cannot refute the fact that non-disabled and non-pregnant employees were also let go as part of Project Compass.  In fact, Plaintiff was one of nineteen AOMs laid off as part of Project Compass, and there is no evidence that any

---

[126] *Id.*
[127] *See* Ex. A at 94:23-95:5.

of the others were disabled or pregnant.[128]   Further, Mr. Given, a non-pregnant/non-disabled

employee, was also laid off as a part of Project Compass.[129]

Notably, several headcount initiatives implemented in 2018, (including Project Compass),

significantly impacted Ms. Muncy's team.

**Sally Muncy's Organization (Proctor & Gamble / Medtronic Account Delivery Team)**

| Courtneay DellaValle-Jones | AOM (P&G) | Laid off in Project Compass ("PC") |
|---|---|---|
| David Given | AOM (Medtronics) | Laid off in PC |
| Patti Franklin | AOM (Medtronics) | Retired 6/30/18 and included in PC Headcount |
| Leslee Thompson[130] | AOM (Medtronics) | Retired 3/18 as part of voluntary RIF |
| Gab Joubert[131] | AOM (P&G) | Retired 5/31/18 as part of voluntary RIF |
| Diorka Ortega | SDM (P&G) | Retained following PC |

Further, Ms. Muncy was demoted from her COD position (which was eliminated) and moved into

the newly reconfigured SDM position.[132]

Notably, the only AOM or SDM on Ms. Muncy's team in October 2017 who remained

employed after Project Compass,[133] Ms. Ortega, was not similarly situated to Plaintiff.  First, Ms.

Ortega was an SDM, not an AOM.  These were different positions with different job titles.[134]

Second, Ms. Ortega did not perform any billing work.[135]  Instead, she led innovation for the P&G

account, developing and managing various projects globally, and led the effort around P&G print

centers globally.[136]  Finally, Ms. Ortega was a senior resource with many years of experience

---

[128] *See* Ex. D.
[129] *See* Ex. D.
[130] Following Ms. Thompson's retirement and the elimination of all AOM positions, her job duties were subsumed by a newly-hired SDM in Minneapolis, Ms. Klutz.  The individual hired for this position had to be able to be physically present at Xerox's client's site in Minneapolis.  *See* Ex. B at 86:22-23; 125:20-126:1; Ex. D.
[131] Following Ms. Joubert's retirement and the elimination of all AOM positions, her job duties were subsumed by a newly hired SDM in Cincinnati, Ms. Smith.  The individual hired for this position had to be able to be physically present at Xerox's client's site in Cincinnati at least four days a week and needed people management experience. *See* Ex. B at 148:9-16.  *See also* Ex. C at 69:23-25; 78:1-7.
[132] *See* Ex. C at 107:14-108:1.
[133] Ms. Muncy had one other SDM on her team in October 2017, Mr. Herrera, an SDM on the P&G account who lived and worked in Guatemala.  As Project Compass was a domestic RIF action, Mr. Herrera was not in its scope and could not be eliminated as part of the action.  *See* Ex. D.
[134] *See* Ex. C at 80:17-25.
[135] *See* Ex. D.
[136]*See* Ex. C at 83:7-84:10.

running multiple projects and account operations at Xerox.[137]  Plaintiff was a relatively new hire with limited experience.[138]  As a result, Ms. Ortega was not similarly situated to Plaintiff, as defined by the law.  *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, (7th Cir 2002) ("It is clear that Meyer was not similarly situated to Patterson because they . . . had different levels of experience and job responsibilities.").  *See also Somerville v. City of Chicago*, 291 F. Supp. 2d 737, 744 (N.D. Ill. 2003) ("A similarly-situated employee is one who is directly comparable to [the plaintiff] in all material respects, including having similar experience.").[139]

In light of these facts, Plaintiff cannot establish that similarly-situated, non-disabled and non-pregnant employees received more favorable treatment than she.  *See Geier v. Medtronic, Inc*. 99 F.3d 238, 243 (7th Cir. 1996) ("Geier similarly fails to establish that others who were not in the protected class, i.e., non-pregnant employees, were treated more favorably.").[140]

## C.  As a Matter of Law, Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation.

In Counts II and IV of the SAC, Plaintiff asserts that her discharge was motivated by retaliatory animus in violation of the ADAAA and PDA.[141]  More specifically, she asserts that she was selected for layoff as a result of her purported April 30, 2018, request to take short-term disability leave due to her high-risk pregnancy.[142]  Both of her retaliation claims are subject to

---

[137] *See* Ex. C at 215:21-25.

[138] *See* Ex. C at 215:1-25.

[139] *Durkin v. City of Chicago*, 199 F. Supp. 2d 836, 844-45 (internal quotation marks omitted).

[140] *See also Curtis v. Earnest Machine Prods. Co.*, No. 1:11-CV-0951-TAB-JMS, 2012 WL 5879439 (S.D. Ind. Nov. 20, 2012) ("Plaintiff also fails to sufficiently identify a similarly situated employee who was treated more favorably. Therefore, Plaintiff's discrimination claim also does not survive summary judgment."); *Quevedo v. Top-Line Furniture Warehouse Corp.*, No. 16-CV-5991, 2018 WL 1508530, at *13 (N.D. Ill. Mar. 27, 2018) ("Plaintiff's lack of a valid comparator makes it impossible to show here—absent more direct evidence—that Defendant's actions were based upon a discriminatory animus."); *Keller v. Indiana Family and Social Servs. Admin.*, 639 F. Supp. 2d 928, (S.D. Ind. 2009) (discrimination claim failed where plaintiffs "entirely failed to identify any similarly situated . . . colleagues who were treated more favorably."); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002) ("If a district court determines that a plaintiff has failed to identify a similarly situated co-worker outside of her protected class . . . it need not address any of the underlying allegations of disparate treatment.").

[141] Dkt. 40 at ¶¶57-60; 67-71.

[142] Dkt. 40 at ¶¶58-60; 71.

summary disposition, because the undisputed facts establish that she was selected for layoff prior to both her pregnancy and her purported request for short-term disability leave.

In order to establish a *prima facie* case of disability and/or pregnancy retaliation, Plaintiff must establish that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) a causal connection between the two. *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F. 3d 595, 601 (7th Cir. 2011). Alternatively, Plaintiff may establish that she: (1) engaged in protected activity; (2) was performing her job satisfactorily; and (3) was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer. *Id.* at 601-602.[143] Based on the facts here, Plaintiff cannot establish either version of a *prima facie* case because she cannot establish that she engaged in protected activity, that she was treated less favorably than similarly situated employees, or a causal connection of any kind.

### 1. Plaintiff Did Not Engage in Protected Activity Under the ADA or Title VII.

Protected activity is the crux of a retaliation claim. "The ADA prohibits employers from retaliating against employees who assert their right under the act to be free from discrimination." *Dickerson*, 657 F. 3d at 601. Crucially, "in order to have a retaliation claim under the ADA, Plaintiff must have complained about disability discrimination . . . If she did not, then of course Defendant could not have retaliated against her for complaining about disability discrimination." *Hardwick v. John and Mary E. Kirby Hosp.*, 860 F. Supp. 2d 641, 650-51 (C.D. Ill. 2012).

Here, Plaintiff makes the conclusory allegation that her request for short-term disability leave constituted protected activity under the ADA and Title VII.[144] However, she has presented *no evidence* to establish that her request for short-term disability was also a request for an

---

[143] *See also Lamb v. Vision Care Holdings, LLC*, 642 F. Supp. 2d 858, 870 (S.D. Ind. 2007); *Dickerson*, 657 F.3d at 601-02.

[144] Dkt. 40 at ¶¶58-60, ¶68.

accommodation under the ADA, or that anyone at Xerox understood her request for disability benefits to also be a request for an accommodation under the ADA. *See Foos v. Taghleef Indus., Inc.*, 132 F. Supp. 3d 1034, 1053 (S.D. Ind. 2015) ("[T]o the extent Mr. Foos does claim that Taghleef perceived him as disabled based on its grant of his FMLA requests and authorization of disability benefits, the Court rejects that argument . . . indeed, the standards for 'disability' within the meaning of disability benefits and 'disability' within the meaning of the ADA are quite different."). *See also Wellman v. DuPont Dow Elastomers, L.L.C.*, 739 F. Supp. 2d 665, 676 (D. Del. 2010) ("Merely having knowledge of the impairment [that led to short-term disability leave], however, is insufficient to suggest that the employer considered or perceived the employee as disabled [under the ADA].").

Similarly, a request for short-term disability benefits is not protected under Title VII. *See Soodman v. Wildman, Harrold, Allen & Dixon*, No. 95 C 3834, 1997 WL 106257, at *9 (N.D. Ill. Feb. 10, 1997) ("Unlike the ADA, the PDA does not require an employer to make accommodations for an employee's absence due to pregnancy."). *See also Avina v. H.T. Hackney Co.*, No. 1:04-CV-1590-RLY-TAB, 2006 WL 8446060, at *5 (S.D. Ind. Jan. 25, 2006) ("[T]he PDA does not require an employer to make work easier for a pregnant employee."); *Troupe v. May Dept. Stores Co.*, 20 F. 3d 734, 738 (7th Cir. 1994) ("The Pregnancy Discrimination Act does not . . . require employers to offer maternity leave or take other steps to make it easier for pregnant women to work."). Rather, "[a]n employee engages in a protected activity [under Title VII] by either: (1) filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII or other employment statutes; or (2) opposing an unlawful employment practice." *Northington v. H & M Intern.*, 712 F. 3d 1062, 1065 (7th Cir. 2013). Plaintiff has not alleged – much less proven – that she engaged in any of the aforementioned protected activities. Although Plaintiff filed a charge of discrimination, that charge was filed only *after* her

termination,[145] such that it cannot serve as the basis for her claim that her termination was retaliatory.  Thus, the undisputed facts prohibit a finding that Plaintiff engaged in activity protected *by the ADA or Title VII.*

### 3.    Plaintiff Has Not Proven Causation.

Plaintiff's retaliation claim also fails because she has presented no evidence of causation. The undisputed evidence shows that in August 2017, Xerox decided to restructure its organization and implement a companywide reduction.[146]  The evidence also shows that Ms. Malone selected Plaintiff for layoff in September 2017 and confirmed that decision in January 2018.[147]  Plaintiff was not pregnant at the time Ms. Malone made the initial decision to include her in the Project Compass layoffs.[148]  Further, Ms. Malone was wholly unaware that Plaintiff was pregnant – much less that her pregnancy was high risk – until the end of March 2018 – *over six months after* she initially selected Plaintiff for termination and over two months after she reaffirmed her selection.[149] As a result of this undisputed timing, there cannot be a causal relationship of any kind between Plaintiff's request for short-term disability leave and/or pregnancy and her selection for layoff. Quite simply, Ms. Malone could not have retaliated against Plaintiff based upon a protected characteristic or activity of which she had no knowledge.  *See Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 633 (7th Cir. 2020) ("A valid retaliation claim requires that the decision-maker know of the protected activity.").[150]  Plaintiff's retaliation claims fail as a matter of law for this reason alone.

---

[145] Dkt. No. 40 at ¶4.
[146] *See* Ex. B at 28:22-30:14.  *See also* Ex. D.
[147] *See* Ex. B at 36:1-20; 46:25-46:3.  *See also* Ex. D.
[148] *Compare* Ex. B at 28:22-30:14 with Ex. A at 84:12-19.
[149] *See* Ex. A at 91:16-18.
[150] *See also See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1006 (7th Cir. 2000) ("Her claim of pregnancy discrimination with respect to her April 1996 raise cannot be based on her *being* pregnant if [the decision-maker] did not know she was."); *Healy v. City of Chicago*, 450 F.3d 732, 740-41 (7th Cir. 2006) (holding that employer could not retaliate when it is unaware of protected activity).

### 4.   Plaintiff Was Not Treated Less Favorably Than Similarly Situated Co-Workers.

Finally, as explained in detail in section B(2) *infra*, the undisputed facts establish that Plaintiff was not treated less favorably than similarly situated co-workers.  In fact, every AOM on Ms. Muncy's team was separated from employment, either via the Project Compass RIF, the voluntary RIF, or retirement.  The only team member who survived these actions, Ms. Ortega, was not similarly situated to Plaintiff because she held a different job title, performed different duties, and had substantially more tenure with Xerox.

### D.  Plaintiff was Terminated Pursuant to a Legitimate, Non-Discriminatory, Non-Retaliatory Reason and Cannot Establish Pretext.

Even if Plaintiff could establish *prima facie* cases of discrimination and retaliation, these claims still fail because her termination was pursuant to a legitimate, nondiscriminatory, non-retaliatory reason.  As discussed in detail above, Plaintiff was terminated pursuant to a companywide RIF, which, as a matter of law, constitutes a legitimate, nondiscriminatory and non-retaliatory reason.  *See Tucker v. Express Scripts Holding*, No. 114CV01698TWPMJD, 2016 WL 2643737, at *6 (S.D. Ind. May 10, 2016) ("Express Scripts asserts that it terminated Tucker because of its nationwide RIF . . . This is a legitimate, non-discriminatory reason for the termination.").[151]

When an employer presents a legitimate, nondiscriminatory reason, the employee may only prevail by showing pretext, and specifically she "must establish that an improper motive tipped the balance in favor of discharge, or that the employer did not honestly believe in the reasons it gave for firing him."  *See Schuster v. Lucent Tech., Inc.* 327 F. 3d 569, 574 (7th Cir. 2003).[152]

---

[151] *See also Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 726 (7th Cir. 2008) ("Rockledge has offered legitimate, nondiscriminatory reasons for Ms. Petts's discharge.  An assistant manager position at the Madison store was to be eliminated as a cost-saving measure.").

[152] *See also Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 693 (7th Cir. 2000) (internal quotation marks omitted).

Plaintiff must do so by "using either the direct or indirect methods of proof." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006). "[U]nder the direct method, [Plaintiff] must put forth evidence that her employer's decision to terminate her had a discriminatory motivation." *Id.* Under the indirect method, Plaintiff must produce "circumstantial evidence [sufficient to] point directly to a discriminatory reason for the termination decision." *Id.* Critically, Plaintiff "must show more than [that defendant's] decision was mistaken, ill-considered or foolish, [and] as long as [the employer] honestly believes those reasons, pretext has not been shown." *Kodl v. Board of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, (7th Cir. 2007).[153] In this analysis, the Court's "only concern is with the honesty of the employer's beliefs." *Petts*, 534 F. 3d at 726. Plaintiff cannot meet this burden.

### 1.   Timing Negates any Inference of Pretext.

As discussed above, Plaintiff was selected for termination before she became pregnant and long before her pregnancy became high risk.[154] Ms. Malone could not have discriminated or retaliated against Plaintiff for a condition of which she was unaware. That is, because the termination decision was made *prior to* Plaintiff's pregnancy, Plaintiff cannot establish pretext. *See Panizzi v. City of Chicago Bd. of Educ.*, No. 07 C 846, 2007 WL 4233755, at *8 (N.D. Ill. Nov. 19, 2007) ("Panizzi's pretext argument is severely weakened by her admission . . . that the non-renewal decision was made before Panizzi notified [the decisionmakers] that she was pregnant."). *See also Brown v. Sara Lee Corp.*, No. 107CV1118DFHDML, 2009 WL 995755 (S.D. Ind. Apr. 14, 2009) (plaintiff would be unable to establish pretext where decision was made prior to knowledge of her pregnancy); *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1006 (7th Cir. 2001) (pregnancy discrimination claim failed where "a review of the record does not establish the

---

[153] *See also Hague v. Thompson Distrib. Co.*, 436 F. 3d 816, 823 (7th Cir. 2006) (internal quotation marks omitted).
[154] *See* Ex. B at 46:2-47:25.  *See also* Ex. D; Ex. D-2; Ex. D-5.

inference that [the decisionmaker] knew about [the plaintiff's] pregnancy before he selected her for the RIF.").

## 2.    There Is No Evidence of Discriminatory Animus.

Additionally negating any inference of pretext, Plaintiff has not presented *any* evidence establishing that Ms. Malone or anyone at Xerox possessed discriminatory animus in selecting her for the RIF.  Rather, the record evidence shows that Ms. Malone assessed all employees within her organization according to the same objective criteria.  She selected Plaintiff's position for elimination because Plaintiff's primary job duty was performing billing activities that were being centralized outside of the service delivery organization.  Furthermore, Ms. Malone also selected for layoff a male employee (Mr. Given) with no known disabilities and no record of engaging in protected activity.  Thus, someone outside of the protected classes at issue was subject to the exact same employment action as Plaintiff.

While Plaintiff may disagree with Ms. Malone's assessment of her skillset and experience as compared to her peers, she cannot and has not offered any evidence establishing that Ms. Malone's belief was anything other than genuine. *See Wilson v. Russell-Stanley Corp.*, 90 F. App'x 958, (7th Cir. 2004) ("[P]laintiff has failed to show that his employer's stated reasoning . . . was false or discriminatory.  Accordingly, his circumstantial evidence fails to support a finding of pretext.").  Accordingly, Plaintiff cannot meet her obligation of pointing to actual evidence undermining Xerox's legitimate reason for terminating her employment, and summary judgment is warranted in Xerox's favor.

## E.  Plaintiff's FMLA Claims Fail as a Matter of Law.

In Counts V and VI of her SAC, Plaintiff asserts that both Defendants violated the FMLA. More specifically, she asserts that Defendants interfered with her rights under the FMLA by failing to return her to the same or an equivalent position upon her return from medical leave and retaliated

against her for exercising her FMLA rights by terminating her employment.  These claims fail as a matter of law for several reasons: (1) Xerox provided Plaintiff with all of the leave the FMLA requires and all of the leave that she requested; (2) Plaintiff did not request FMLA leave until several months after the decision to eliminate her position; (3) Plaintiff was not entitled to job restoration because she was unable to return to work at the conclusion of her leave; and (4) Plaintiff's position would have been eliminated regardless of her request for FMLA leave.

## 1.   As a Matter of Law, Plaintiff Cannot Establish Interference.

To establish an interference claim under the FMLA, Plaintiff must show that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled.  *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006).  Plaintiff's FMLA interference claim fails because the undisputed facts establish that she was provided with five months of medical leave, significantly more than the statute requires, and she was not able to return to work when her FMLA leave ended.

### a.   *Plaintiff was Not Denied any Benefits Under the FMLA.*

As an initial matter, Plaintiff was not entitled to the FMLA's protections because she was selected for termination *prior to* her request for leave.  Under the well-settled law, "[a]n employee cannot establish that he is entitled to FMLA benefits if it is undisputed that an employer decided to terminate an employee before the employee requested FMLA leave, or before the employer became aware of the employee's medical condition."  *See Castaneda v. Bd. of Educ. of City of Chicago*, No. 16 C 10167, 2019 WL 1332181, at * (N.D. Ill. Mar. 25, 2019).  As Ms. Malone selected Plaintiff for layoff in the Project Compass reductions in September 2017, three months before Plaintiff knew she was pregnant and long before she requested leave, Plaintiff was not entitled to any FMLA benefits.

28

Moreover, the undisputed facts establish that Xerox provided Plaintiff with five months of medical leave – substantially more than the twelve weeks provided by the FMLA – even though it had no obligation to do so.[155]  Indeed, Plaintiff's own allegations in the SAC confirm that she was provided all twelve weeks of FMLA leave: "Ms. Dellavalle-Jones' FMLA leave and short-term disability leave ran concurrently and ended on September 30, 2018."[156]  Even further, despite the fact that Plaintiff did not request medical leave until *after* she was notified of her termination, Xerox delayed the effective date of her discharge until her short-term disability benefits expired, such that she remained on company-sponsored benefits for *five months* – far longer than required by the FMLA and far longer than she was entitled to by virtue of her termination.  And as explained in detail below, Plaintiff was not entitled to job restoration.  Therefore, as a matter of law, Plaintiff received all benefits to which she would have been entitled under the FMLA.

### b.  *Plaintiff was Not Entitled to Job Restoration.*

Even if Plaintiff was entitled to leave under the FMLA, she was not entitled to job restoration upon the cessation of her medical leave.  Quite simply, Plaintiff was not medically able to return to work when her twelve weeks of protected leave ended.  Plaintiff's short-term disability leave, which ran concurrently with her FMLA leave, was effective May 1, 2018,[157] such that her FMLA leave would have ended around July 23, 2018.  Plaintiff's own testimony establishes that she was not able to return to work at that time.  Specifically, she testified that she was not medically able to return to work until eight to ten weeks after the July 6, 2018, birth of her child.[158]  In fact, the undisputed evidence establishes that Plaintiff was incapacitated at least through September 1, 2018[159] – *more than a month after her FMLA leave expired.*  As a result, Plaintiff was not entitled

---

[155] Dkt. No. 40.
[156] *Id.* at ¶77.
[157] Dkt. 40 at ¶77.
[158] *See* Ex. A at 18:24-25, 144:16-145:2.
[159] *See* Ex. A at 145:10-13.  *See also* Medical Provider STD Request, attached as Ex. A-24.

to job restoration under the FMLA.  *See Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008) ("[T]he evidence in this case established, as a matter of law, that Mr. Franzen was not entitled to damages because . . . he was unable to return to work at the end of the 12-week FMLA period."). *See also Soodman v. Wildman, Harrold, Allen & Dixon*, No. 95 C 3834, 1997 WL 106257, at *8 (N.D. Ill. Feb. 10, 1997) ("Indeed, the regulations concerning the FMLA provide that an employee who, at the end of her FMLA leave, is unable to perform some essential function of her former position . . . does not even have the right to be placed in another, perhaps less than equivalent, position that she could perform.").

Additionally negating any right to reinstatement, Plaintiff's position was being eliminated regardless of her request for FMLA leave.  Thus, she was not entitled to job restoration as "[t]he FMLA allows an employer to 'refuse to restore an employee to their former position when restoration would confer a 'right, benefit, or position of employment' that the employee would not have been entitled to if the employee had never left the workplace.'' *Simpson v. Office of Chief Judge of Circuit Court of Will Cty.*, 559 F.3d 704, 712 (7th Cir. 2009).  *See also* 29 U.S.C. §2614(a)(3)(B).  "In other words, an employee is not entitled to return to her prior position if she would have been demoted or terminated regardless of whether she took FMLA leave." *Simpson*, 559 F.3d at 712.  Because Plaintiff's position was slated for elimination prior to (and regardless of) her FMLA leave, she was not entitled to job restoration post-leave.

As a matter of law, Plaintiff's FMLA interference claim is without merit and due to be dismissed.  Simply put, Xerox allowed her to take all of the medical leave provided for under the FMLA, as well as two additional months of leave.  Moreover, Xerox had no obligation to restore her to any position because: (1) her job was slated for elimination prior to her request for leave, and (2) she was unable to return to work after 12 weeks of medical leave.

**2.    As a Matter of Law, No FMLA Retaliation Occurred.**

Finally, Plaintiff's allegation that Defendants retaliated against her in violation of the FMLA (Count VI) is completely without merit as she cannot establish retaliatory intent or a causal connection between her purported protected activity and her selection for layoff.   *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 995 (7th Cir. 2010) (requiring employee to establish that employer took a material adverse action because she took FMLA leave or engaged in a protected activity);   *James v. Hyatt Regency Chicago*, 707 F.3d 775, 781 (7th Cir. 2013) (same); *Pagel v. TIN Inc.*, 695 F. 3d 622, 626 (7th Cir. 2012) (same).

#### a.   *Plaintiff Did Not Engage in Protected Activity.*

Under the FMLA, an employee engages in protected activity when she requests FMLA-protected leave.   *See Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). Critically, "it is the employee's duty to place the employer on notice by giving the employer 'enough information to establish probable cause, as it were, to believe that [the employee] is entitled to FMLA leave.'"   *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 220 (7th Cir. 2015). *See also Aubuchon v. Knauf Fiberglass GMBH*, 359 F.3d 950, 953 (7th Cir. 2004).

Plaintiff alleges that she engaged in protected activity when she requested short-term disability leave on April 30, 2018.[160]   Plaintiff has failed to show, however, that her request for disability leave necessarily equates to a request for FMLA leave.   That is, while an employee's need for short-term disability leave *might* also satisfy the FMLA's "serious health condition" standard, that is not necessarily always the case.   *See generally Murray v. AT&T Mobility LLC*, 374 F. App'x 667, 671 (7th Cir. 2010) ("The general rule is that other types of available leave, such as short-term disability and workers' compensation leave, *may* be charged against FMLA

---

[160] Dkt. No. 9 at ¶¶68, 82-83.

balances."). (emphasis added).  Even further, when Plaintiff informed Ms. Muncy that she had opened a claim for short-term disability benefits, she specifically stated that she *may* need leave prior to the birth of her child, not that she needed it immediately.  Indeed, the paperwork submitted with her short-term disability request noted that she intended to begin leave in *August* 2018.[161] Only after Plaintiff learned of her termination did she request immediate leave.[162]  Thus, on April 30, 2018, Xerox was only aware that – at most – Plaintiff *might* take short-term disability leave and that said leave *might* begin in August 2018.  Considering the vagueness of Plaintiff's request, it cannot be said that she satisfied her notice obligation under the FMLA.  *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 220 (7th Cir. 2015) ("Curtis's statement . . . that he was *contemplating* taking a 'medical leave' does not give Costco management sufficient information regarding the leave, the duration of the leave, the timing of the leave, and his health condition justifying the leave, to place Costco on notice.").  Plaintiff's failure to meet her notice obligations preclude her FMLA claim.  *See Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008) ("However, the failure to turn in the forms [notifying employer of FMLA request] forecloses Ridings' ability to persevere on an FMLA interference claim because she did not fulfill her obligations in order to be protected.").

### b.  *Plaintiff Requested Leave After she was Selected for Layoff.*

Even if Plaintiff engaged in activity protected under the FMLA, it is undisputed that Plaintiff was selected for layoff *before* she requested FMLA leave and by an individual who had no knowledge of her request for leave until late in the afternoon the day before layoff notices were issued.  This timing, standing alone, should result in dismissal of her FMLA retaliation claim.[163]

---

[161] *See* Ex. A-9.  *See also* Ex. A at 106:4-19.

[162] *See* Ex. A at 134:16-138:14.  *See also* Ex. A-11.

[163] *Salameh v. Sears Holding Management Corporation* is instructive here.  No. 08 C 4372, 2010 WL 183361, at * (N.D. Ill. Jan. 23, 2010).  There, the plaintiff alleged that his former employer retaliated against him for requesting FMLA leave when it eliminated his position in a RIF.  Specifically, the day after plaintiff's manager told upper

*See Gorski v. Med. Protective Co.*, No. 1:09-CV-350, 2010 WL 4686023 (N.D. Ind. Nov. 10, 2010)

("[T]hese emails definitively indicate that [the decisionmakers] had already made the decision to

terminate Gorski *before* she ever sustained the injury for which she asserts she requested FMLA

leave.  'Absent knowledge that the FMLA has been previously invoked, there can be no retaliatory

intent.'").  *See also Watkins v. Henderson*, No. IP99-1945-C, 2001 WL 219807, at *20 (S.D. Inc.

Mar. 5, 2001).

### c. *Defendants Had a Legitimate Reason for Their Actions.*

Finally, Plaintiff's FMLA retaliation claim fails because she cannot dispute Defendants'

legitimate, non-retaliatory reason for layoff – the Project Compass RIF.  Plaintiff was just one of

nineteen AOMs in the Service Delivery organization selected for laid off in May 2018 as a result

---

management that he had selected the plaintiff for layoff, the plaintiff requested FMLA leave.  The plaintiff's FMLA was scheduled to begin the day after he was notified of his discharge.  On considering Plaintiff's FMLA retaliation claim, the court noted that "there [wa]s no dispute that Sears made the decision to terminate Plaintiff several days before [his supervisor] had any knowledge of Plaintiff's leave request."  *Id.* at *6.  However, "when [the employer] implemented the decision, [management] knew that Plaintiff's leave was about to begin, thus creating a unique situation in which Sears made a non-discriminatory decision, but acquired knowledge of Plaintiff's protected activity before it was implemented."  *Id.*  The court dismissed the claim on summary judgment, because the plaintiff "failed to identify any affirmative evidence to suggest that Sears viewed his FMLA leave negatively, discouraged him from taking leave or made it difficult for him to seek leave."  *Id.*  Critically, the court opined:

> What Sears could or should have done as to the time it chose to implement the decision
> is not the issue.  Courts cannot impose on employers their own ideas of what constitutes
> a prudent business decision; they merely assess whether an employer has engaged in
> conduct for a forbidden reason . . . Here, Plaintiff was selected for termination before his
> supervisor had any knowledge of his FMLA leave.  And there is no other evidence that
> a reasonable juror could consider beyond the timing of Plaintiff's termination.  If the
> Court were to allow Plaintiff's claim to go forward, despite the minimal evidence he's
> presented, such a ruling would penalize Sears for making a ministerial choice to
> implement a non-discriminatory decision that the company formulated before any
> protected activity took place.  This is not the conduct that the FMLA is designed to
> prevent . . . Under the principles set forth above, the FMLA does not apply to this type
> of situation.  The FMLA is a shield to prevent an employer from acting pursuant to a
> prohibited animus, it is not a sword with which employees can disrupt their employer's
> non-actionable decisions.

*Id.* at *7.

The material facts of *Salameh* are indistinguishable from those herein.  In both cases, the employer unequivocally decided to terminate the employee prior to the decisionmaker's knowledge of the employee's FMLA request.  Further, both employers implemented the termination decisions shortly after the employers became aware of the request for leave.  Here, just as in *Salameh*, because the termination decision was made *prior to* the leave request, Plaintiff's claim of FMLA retaliation cannot stand.

of Project Compass.  Moreover, she does not dispute that another AOM who reported to Ms. Malone – Mr. Given – was also selected for layoff.

**F.  Plaintiff is Not Entitled to Punitive or Emotional Distress Damages under the FMLA.**

As discussed above, both of Plaintiff's FMLA claims are without merit.  However, to the extent the Court determines that either claim can survive summary judgment, it should dismiss any request by Plaintiff for punitive and/or emotional distress damages on her FMLA claims.  As a matter of law, said damages are not recoverable under the FMLA.  *See Sons v. Henry Cty.*, No. 105CV00516DFHTAB, 2007 WL 968726, at \*2 (S.D. Ind. Mar. 13, 2007) ("Other kinds of damages, including punitive damages, nominal damages, or damages for emotional distress, are not recoverable under the FMLA.").

<u>**CONCLUSION**</u>

As outlined in detail herein, no genuine issue of material fact exists.  Instead, the undisputed evidence shows that Plaintiff was selected for termination *prior to* her pregnancy, and long before the decision-maker was aware of her pregnancy and pregnancy-related issues.  Even further, Plaintiff was terminated pursuant to a legitimate, nondiscriminatory, and non-retaliatory reason – a companywide RIF.  Finally, Defendants did not interfere with or retaliate against Plaintiff's rights under the FMLA, as Plaintiff was provided all FMLA-required leave and the termination decision was made long before any request for leave.  Therefore, Defendants respectfully request that the Court enter summary judgment in their favor on all of Plaintiff's claims, and award such other relief as the Court deems proper.

Respectfully submitted,

*/s/Nicole S. Adler*
NICOLE S. ADLER, LA. BAR No. 08612
JESSICA M. THOMAS, LA. BAR. No. 38424

The Kullman Firm
1100 Poydras Street, Suite 1600
New Orleans, LA 70163-1600
Telephone:  (504) 524-4162
 Facsimile:  (504) 596-4114
Email: NSA@kullmanlaw.com
            JMT@kullmanlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2020, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all

parties of record.

*/ /Nicole S. Adler*